UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DEMETRIUS CORDELL BAILEY, ) | |
| ) | |
| Plaintiff, ) | 1:19-CV-00013-DCLC-SKL |
| ) | |
| vs. ) | |
| ) | |
| HAMILTON COUNTY GOVERNMENT, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Hamilton County's ("the County") Motion for Summary Judgment [Doc. 28]. Plaintiff, Demetrius Cordell Bailey ("Bailey") responded [Docs. 35 & 37]. The County filed a reply, which includes a Motion to Strike [Doc. 42]. Bailey responded to the Motion to Strike [Doc. 45]. These matters are now ripe for resolution. For the reasons that follow, the Motion to Strike [Doc. 42] is **DENIED** and the County's Motion for Summary Judgment [Doc. 28] is **GRANTED**.

**I.  BACKGROUND**

On January 14, 2018, Jason Smith, a deputy with the Hamilton County Sheriff's Office ("HCSO"), and Kevin Ritchey, a reserve deputy with the HCSO, joined the Chattanooga Police Department ("CPD") and the East Ridge Police Department ("ERPD") in a vehicle pursuit of Bailey, who was wanted on charges of aggravated rape and aggravated kidnapping [Doc. 32, p. 5]. The ERPD ultimately deployed spike strips to stop Bailey's truck [*Id*.]. Bailey contends that once his truck came to a stop, he remained seated and held both hands outside the driver's window [Doc. 1-1, p. 5]. Bailey asserts he then heard a loud "bang" and the next thing he recalls he was on the ground "being beaten and pummeled" by the Officers [*Id*.]. Bailey states that he was rendered into

1

a partial state of unconsciousness and transported the Erlanger hospital where he discovered that he suffered facial injuries, head injuries, and a fractured bone in his left hand [*Id*.]. Based on these facts, Bailey filed a Complaint against the County and the Officers ("Defendants") in the Circuit Court of Hamilton County on December 19, 2018 [*Id*.]. The Defendants subsequently removed the action to this Court on January 17, 2019 [Doc. 1]. Bailey asserts claims against the County for excessive force and failure to protect under 42 U.S.C. § 1983 and a common law claim of negligence [Doc. 1-1].

Relevant to the instant motion by the County, Plaintiff alleged additional facts in his Complaint regarding the County's actions in response two instances of excessive force from 2015. First, Bailey referenced county corrections officer Rodney Terrell's ("Terrell") unlawful use of a taser on an individual named Nancy Mason while in custody of the sheriff in March of 2015 [Doc. 1-1, p. 5]. Second, Bailey referenced HCSO Deputy Daniel Hendrix's ("Hendrix") assault of a fully handcuffed and shackled prisoner, Leslie Hayes, in August of 2015 [*Id*. at p. 6]. Almost two years later, in March of 2017, CPD officers shot and killed Hendrix after he drew his county-issued gun and refused demands to drop the weapon [*Id*.]. Bailey contends that "[d]espite a finding by the Sheriff's own Internal Affairs investigation that Terrell used excessive force on Mason…the County did not suspend or terminate Terrell" and "despite the full knowledge of Hendrix's propensity to use extreme violence, the County allowed Hendrix to return to fully duty with full use and benefit of his county issued gun" [*Id*. at p. 6-7].

On March 13, 2020, the County filed the Motion for Summary Judgment that is currently before the Court [Doc. 28]. The County argues (1) there is no factual or legal support for municipal liability under 42 U.S.C. § 1983 and (2) the common law claim of negligence fails as a matter of law. On May 1, 2020, the County, along with the Officers, moved to strike portions of Bailey's

responses to the motion for summary judgment [Doc. 42]. The Court will, in turn, address the motion to strike and the County's arguments in favor of summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where video evidence is present, the Court shall view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001).

## III. ANALYSIS

### A. Motion to Strike Portions of Bailey's Responses

In addition to their reply, Defendants filed a motion to strike portions of Bailey's responses [Docs. 35 & 37] pursuant to Federal Rule of Civil Procedure 56(c)(2), which provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendants assert that "all of the 'facts' presented" by Bailey in his responses are inadmissible. [Doc. 42, p. 3]. Specifically, Defendants argue that the facts "are hearsay, are not properly in the record, and simply include his

3

characterizations of what other records and data will show." [*Id*.]. However, Defendants do not state which facts or assertions are allegedly inadmissible.

To the extent Defendants are attempting to argue that the Internal Affairs investigation report is hearsay, the Court previously held that the report is admissible for purposes of ruling on Defendants' motions for summary judgment [Doc. 68, p. 2]. The Court also previously rejected Defendants' argument that Bailey's statements concerning the video of the incident are inadmissible hearsay [Doc. 69, p. 2]. In light of the Defendants' broad objection to "all of the 'facts' presented" by Bailey, the Court is unable to determine what facts are being objected to and the basis of such objections. Accordingly, Defendants' motion to strike [Doc. 42] is not well-taken and denied.

### B. Municipal Liability under 42 U.S.C. § 1983

Plaintiff asserts that by failing to suspend or terminate Terrell and allowing Hendrix to return to full duty despite his "propensity to use extreme violence," the County "created an environment that allowed [the Officers] to believe that abusive behavior would not be properly monitored, investigated, nor punished and was tantamount to a policy of the County." [Doc. 1-1, p. 7]. Further, Bailey contends that such failures by the County "constituted deliberate indifference on the part of the County and were the direct and proximate cause" of the violations of Bailey's civil rights [*Id*. at p. 8-9]. The County argues that, to the extent Bailey has established violations of his civil rights, he has not established that such violations are attributable to the County itself [Doc. 29, p. 5].

To establish liability under § 1983, a plaintiff must demonstrate that a person acting under color of state law subjected him to or caused him to be subjected to deprivation of a right secured by the Constitution or laws of the United States. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th

4

Cir. 1994). Although a municipality is a "person" within the meaning of § 1983, a municipality cannot be held vicariously liable for the actions of its employees under a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). As a result, to prevail in a § 1983 action against a municipality, the plaintiff must show that the alleged violation occurred due to a municipal policy or custom. *Id.* A municipal policy or custom may be established by a showing by the plaintiff of "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Bailey does not argue that his alleged constitutional violations occurred as a result of an official policy, ratification by a final decisionmaker, or inadequate training. Rather, he asserts that the County's inaction regarding previous instances of excessive force created a custom amounting to an official policy, which falls under the fourth theory of municipal liability.

The Sixth Circuit has established the following requirements for municipal liability under an "'inaction' theory":

(1) the existence of a clear and persistent pattern of [illegal activity];

(2) notice or constructive notice on the part of the [County];

(3) the [County's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the [County's] custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). First, "[a] handful of isolated excessive force complaints occurring several years before the relevant conduct"

5

are insufficient to establish a pattern of illegal activity. *Estate of Hickman v. Moore*, 502 F. App'x 459, 469 (6th Cir. 2012). Here, Bailey references two separate instances of excessive force from 2015 involving two unrelated officers employed by the County. These two instances are insufficient to establish a "clear and persistent" pattern of illegal activity. *Doe*, 103 F.3d at 508.

Even if Bailey could establish that the County's response to these instances of excessive force was inappropriate or lacking in any way, "the complaints are sufficiently few in number and removed in time from [the alleged excessive force against Bailey] that they do not credibly show a custom or practice of condoning [the Officers'] use of excessive force" in this matter. *Estate of Hickman*, 502 F. App'x at 469. In the absence of "tacit approval" of a pattern of illegal activity by the County, Bailey cannot establish a "direct causal link" between the County and the alleged constitutional violations. *Doe*, 103 F.3d at 508. Accordingly, the County is entitled to summary judgment as a matter of law on Bailey's claims under 42 U.S.C. § 1983 for excessive force and failure to protect.

### C. Negligence

Count three of Bailey's Complaint asserts a claim of negligence against the County and the individual Officers [Doc. 1-1, p. 10]. Specifically, Bailey asserts that the Officers "had an affirmative duty not to injure [Bailey] in the manner averred in [the] Complaint" and the Officers' "actions and omissions…were the direct and proximate cause of [Bailey's] injuries both physical and mental, and needless suffering." [*Id*.]. Bailey references Tennessee Code Annotated § 8-8-302 and Article I, section 13 of the Tennessee Constitution as authority for his negligence claim against the County.

6

To the extent Bailey attempts to state a claim for violation of the Tennessee Constitution, Tennessee does not recognize such a private cause of action. *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). As for § 8-8-302, the statute provides:

> [a]nyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302. However, "the [Tennessee Governmental Tort Liability Act ("TGTLA")] supersedes Tenn. Code Ann. § 8-8-302 concerning negligence claims." *Siler v. Webber*, No. 3:05-CV-341, 2009 WL 10680025, at *8 (E.D. Tenn. Jan. 27, 2009). Thus, "all negligence claims brought against [the County] are strictly governed by the TGTLA, not Tenn. Code Ann. § 8-8-302." *Id*.

The TGTLA provides governmental entities with immunity "from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA subsequently removes such immunity for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," but provides a list of exceptions to this removal of immunity. Tenn. Code Ann. § 29-20-205. The second exception provides that immunity is not removed "if the injury arises out of…civil rights." *Id*. This "'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). A claim of negligence falls within the civil rights exception when it "arises out of the same circumstances giving rise to [the] civil rights claim under § 1983." *Id*.

Here, the alleged injuries caused by the Officers and failure to act by the Officers form the basis for both Bailey's negligence claim and his excessive force and failure to protect claims under

7

42 U.S.C. § 1983.  As a result, Bailey's claim of negligence arises out of the same circumstances giving rise to his civil rights claim under § 1983 and falls within the civil rights exception.  Bailey cannot "circumvent or avoid the County's immunity from suit under § 29-20-205(2) by couching some of [his] civil rights claims against the County in the guise of negligence." *Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010).  Accordingly, the County is immune from suit under the TGTLA and is entitled to summary judgment on Bailey's claim of negligence.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Defendants' Motion to Strike [Doc. 42] is **DENIED** and the County's Motion for Summary Judgment [Doc. 28] is **GRANTED**.  Any and all claims against the County are **DISMISSED**.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge